IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MICHAEL DOUGLAS FRAZIER                                      PLAINTIFF
#151108

V.                              NO. 3:22-cv-37-DPM-ERE

TAMMY GLENN, *et al.*                                        DEFENDANTS

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections:

This Recommendation has been sent to United States District Judge D.P.
Marshall Jr. Any party may file written objections to all or part of this
Recommendation. Any objections filed must: (1) specifically explain the factual
and/or legal basis for your objection; and (2) be received by the Clerk of this Court
within fourteen (14) days of the date of this Recommendation. If no objections are
filed, Judge Marshall can adopt this Recommendation without independently
reviewing all of the evidence in the record. By not objecting, the parties may waive
the right to appeal questions of fact.

### II.   Background:

*Pro se* plaintiff Michael Douglas Frazier filed this lawsuit under 42 U.S.C. §
1983 regarding his prior detention at the Greene County Detention Center
("GCDC"). *Doc. 1*. He currently proceeds on allegations that: (1) Nurse Practitioner
Tammy Glenn and Medical Employee Hannah O'Neal (the "Medical Defendants")

and Jail Administrator Brent Cox failed to provide him HIV medication during his detention in October 2020; (2) Defendant Glenn caused him to go without medication for five days between July and August 2021; and (3) Defendant O'Neal refused him medication on one or two occasions in the summer of 2021.[1] *Docs. 5, 29.* He sues all Defendants in both their individual and official capacities seeking monetary damages and injunctive relief.

On January 17, 2024, Defendant Cox filed a motion for summary judgment, supporting brief, and statement of facts (*Docs. 126, 127, 128*) and Medical Defendants filed a joint motion for summary judgment, supporting brief, and statement of facts. *Docs. 129, 130, 131.* On February 5, Mr. Frazier filed a response in opposition to Defendant Cox's motion (*Docs. 144, 146*). Mr. Frazier has not filed an additional response, and the extended time for doing so has expired.[2] Accordingly, the motions are ripe for review.

For the reasons stated below, both motions for summary judgment (*Docs. 126, 129*) should be granted.

---

[1] The Court previously dismissed Mr. Frazier's claims against Defendant Estelle Bland based on his failure to exhaust his administrative remedies. *Doc. 162.*

[2] On February 28, 2024, the Court ordered Dr. Manuel Kelley to produce medical records requested by Mr. Frazier and gave Mr. Frazier until April 30, to file an additional response to Defendants' motions for summary judgment. *Doc. 148.* On March 15, 2024, the subpoenaed medical records were received, and the Clerk provided copies to Mr. Frazier and defense counsel. *Doc. 158.*

## III.   Discussion:

### A.   Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

B.    **Defendant Cox's Motion for Summary Judgment**

1.    **Undisputed Facts[3]**

Mr. Frazier, an HIV positive inmate,[4] was housed at the GCDC from October 14, 2020 until October 30, 2020. *Doc. 128-1 at 42, 47-48; Doc. 128-2 at 1*. He complains that during that period, Defendant Cox failed to provide him his HIV medications. However, Mr. Frazier has testified that: (1) he is not aware whether Defendant Cox was involved in the decision not to contact ARcare to obtain his HIV medication (*Id. at 8*); (2) he never informed Defendant Cox that he needed his HIV medication (*Id. at 9*); (3) he sued Defendant Cox based on his position as jail administrator (*Doc. 128-1 at 4*); and (4) the GCDC did not persistently fail to provide him medication (*Id. at 10*).

2.    **Medical Deliberate Indifference**

a.    **Standard**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."[5] *Estelle v. Gamble*, 429 U.S. 97, 104

---

[3] These facts are taken from: (1) Mr. Frazier's deposition testimony (*Doc. 128-1*); and (2) his booking sheet (*Doc. 128-2*).
.

[4] In his deposition, Mr. Frazier testified that he now has "full-blown AIDS." *Doc. 128-1 at 18*.

[5] Because Mr. Frazier was being held for violation of parole on a prior conviction (*Doc. 2 at 3*), the Court analyzes his claims under the Eighth Amendment. See *Sterling v. Taylor*, 2017 WL 1511296 (E.D. Ark. 2017) ("after conviction, the Eighth Amendment 'serves as the primary source

(1976) (omitting quotations and citation). At the summary judgment stage, Mr. Frazier "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference.[6] *Id. at 575*. Instead, deliberate indifference requires culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

### b.    Qualified Immunity – Individual Capacity Claim

Defendant Cox asserts qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff,

---

of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Graham v. Connor*, 490 U.S 386, (1989).

[6] Mr. Frazier's pleadings assert only federal constitutional claims. Accordingly, it is not necessary to assess whether either of the remaining Defendants acted negligently in violation of state law. See also 28 U.S.C. § 1367(c)(3) (district court may, once it has dismissed federal claims on which its original jurisdiction is based, decline to exercise jurisdiction over supplemental state law claims).

demonstrate the deprivation of a constitutional or statutory right; and (2) the right

was clearly established at the time of the deprivation." *Howard v. Kansas City Police*

*Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

Based on the undisputed evidence before the Court, no reasonable juror could

conclude that Defendant Cox was deliberately indifferent to Mr. Frazier's medical

needs. Mr. Frazier concedes that: (1) he is not aware of whether Defendant Cox was

personally involved in any decision to call or not to call ARcare to obtain his HIV

medication (*Id. at* 8); and (2) he never told Defendant Cox that he needed his HIV

medication (*Id. at 9*). If Defendant Cox was not aware of Mr. Frazier's need for

prescription medication, he could not have been deliberately indifferent to Mr.

Frazier's medical needs.

In addition, Mr. Frazier has acknowledged that he sues Defendant Cox based

on his supervisory position at the County Jail. Established law holds that a supervisor

may not be held vicariously liable under § 1983 for the constitutional violations of a

subordinate. *Ashcroft*, 556 U.S. at 676 (holding that "vicarious liability is

inapplicable to . . . § 1983 suits"); *Saylor v. Nebraska*, 812 F.3d 637, 644-45 (8th

Cir. 2016) (because a supervisor cannot be held vicariously liable for the

constitutional violations of a subordinate, prisoner must "show that the supervisor

personally participated in or had direct responsibility for the alleged violations" or

"that the supervisor actually knew of, and was deliberately indifferent to or tacitly

authorized, the unconstitutional acts"). Mr. Frazier has failed to present any evidence that Defendant Cox either: (1) had knowledge of any unconstitutional conduct of any of his subordinates; or (2) authorized such conduct.

In opposition to Defendant Cox's motion, Mr. Frazier states that "feels strongly that Mr. Cox [knew] everything that was going on with Plaintiff." *Doc. 146 at 2*. However, Mr. Frazier's self-serving, unsubstantiated allegations are insufficient to defeat a motion for summary judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").

On this summary judgment record, Mr. Frazier has failed to present evidence to allow a reasonable fact finder to conclude that Mr. Frazier suffered any constitutional deprivation because of Defendant Cox's conduct. As a result, Defendant Cox is entitled to qualified immunity on Mr. Frazier's medical deliberate indifference claim against him in his individual capacity.

### c.    Official Capacity Claim

Mr. Frazier's official capacity claim against Defendant Cox is really a claim against Greene County. *Brewington v. Keener, supra*. Greene County cannot be held vicariously liable, in a § 1983 action, for the acts of its employees. *Id.* at 800-01 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95

(1978)). Instead, the County can only be held liable if its policies, customs, and practices caused Mr. Frazier's injury. *Brewington,* 902 F.3d at 801-02; *Corwin v. City of Independence, Missouri,* 829 F.3d 695, 699-700 (8th Cir. 2016).

Mr. Frazier has failed to present any evidence that Greene County had a policy or custom of failing to provide medication. To the contrary, Mr. Frazier testified that he did not have a persistent problem obtaining his prescription medication while incarcerated at the GCDC. There is no evidence to allow a reasonable fact finder to find in Mr. Frazier's favor on his official capacity claim, which therefore should be dismissed with prejudice.

### C.    Medical Defendants' Joint Motion for Summary Judgment

### 1.    Undisputed Facts[7]

Before his incarceration at the GCDC, Mr. Frazier had a history of taking three different medications to treat HIV: Isentress, Tenofovir, and Lamivudine. *Doc. 2 at 5, Doc. 129-1 at 1-8.* Mr. Frazier acknowledged it was not unusual for him to go at least 30 days without his HIV medication. *Doc. 129-7 at 2.*

According to Mr. Frazier, after October 14, 2020, the day he was booked into the GCDC (*Doc. 129-1 at 218*), he went 31 days without his HIV medication. *Doc. 129-7 at 12.* However, Medical Defendants were responsible for Mr. Frazier's

---

[7] Unless otherwise indicated, these facts are taken from: (1) Mr. Frazier's medical records (*Doc. 129-1, Doc. 129-2*); (2) his deposition testimony (*Doc. 129-7*); (3) Tammy Glenn's declaration (*Doc. 129-4*); and (4) Mr. Frazier's grievances and sick-call requests (*Doc. 129-3*).

medical care for only 16 days, until October 30, 2020, when he was released to the Supervised Sanction Program (SSP). It is also undisputed that Mr. Frazier did not have his medication in his possession upon his arrival at the GCDC, and he did not receive his HIV medication prior to his transfer to the SSP.

On October 15, Kristina Gibson (a non-party) completed a medical intake form noting that Mr. Frazier had been taking HIV medication. *Doc. 129-1 at 216-217*.

On October 18, Mr. Frazier filed a grievance asking: (1) what he could do to obtain his HIV medication; and (2) whether he could be "fast-tracked" to the SSP so that he could receive his medication. *Doc. 129-3 at 2*.

According to Mr. Frazier's grievance record, the following day, Defendant Glenn responded to Mr. Frazier's grievance as follows:

> I . . . spoke with Ms. Enderle regarding getting you fast tracked. She states that she was in the process of getting you transferred. I asked about the meds and she said you would have to wait until you got there in order to get started on your meds. You will have to see the doctor and have blood drawn since you are due for all that.

*Id*.

On October 19, Mr. Frazier filed a sick-call request again asking how he could obtain his HIV medication. *Id. at 13*. The following day, Defendant Glenn responded by informing Mr. Frazier that he was "on the list for fast track." *Id*.

On October 23, Mr. Frazier filed another sick-call request seeking an update on the status of his transfer to the SSP. *Id. at 14*. The same day, Defendant Glenn

responded, "It is up to the SSP. They are aware that you are here and know your medical condition. It is out of my hands." *Id.*

On October 30, Mr. Frazier was transferred to the SSP. *Doc. 129-7 at 12*.

According to Defendant Glenn, because GCDC medical staff must coordinate with outside agencies to obtain medication, the process for obtaining HIV medication typically takes more than two weeks. *Doc. 129-4 at 2*. After speaking with SSP officials, Defendant Glenn concluded that the most efficient way that Mr. Frazier could receive his HIV medication was to fast-track his transfer to the SSP program, where he could be evaluated by a physician and obtain his medication. It is undisputed that Defendant Glenn placed Mr. Frazier on the "fast track to the SSP" to get him his medication. *Doc. 128-1 at 21-22*, *Doc. 129-4 at 3*.

In deposition, Mr. Frazier opined that Defendant Glenn should have called ARcare to obtain his medications. *Doc. 129-7 at 5*. However, in her declaration, Defendant Glenn states that Mr. Frazier requested only to be fast-tracked to the SSP, which she accomplished, and he never requested that she take any other action to obtain his medications. *Doc. 129-4 at 3*.

On June 9, 2021, Mr. Frazier was again booked into the GCDC. *Doc. 129-1 at 205*.

On June 11, Nurse Bailey Burns (a non-party) completed Mr. Frazier's medical intake form. *Id. at 211-212*. Mr. Frazier reported taking Lamivudine at that

time. *Id*.

During his second incarceration at the GCDC, Mr. Frazier alleges that he went five days in either July or August without his medication. *Doc. 2 at 7*.

However, in June 2021, Defendant Glenn successfully obtained Mr. Frazier's medication by contacting both ARcare and Mr. Frazier's sister. *Doc. 129 at 3-4*.

On August 11, Mr. Frazier filed a sick-call request stating that he had missed five days of his medication "last week." *Doc. 129-1 at 200*.

On August 13, Mr. Frazier filed a sick-call request complaining that Defendant Glenn "allowed [him] to miss 5 days of [his] meds last month." *Doc. 129-1 at 202*.

In addition, Mr. Frazier alleges that Defendant O'Neal denied him medication one day between June and August 2021 because either Mr. Frazier was not present or did not hear the medication call. *Doc. 2 at 7*; *Doc. 128-1 at 22, 28*.

As of August 31, 2021, Mr. Frazier was "doing well," "having no symptoms from his [HIV] and was "undetected." *Doc. 129-1 at 15*; *Doc. 129-7 at 7*.

Finally, Medical Defendants submit the affidavit of William Cooper, D.O., in support of their motion. *Doc. 129-6*. Dr. Cooper testifies that: (1) "Mr. Frazier did not suffer any significant harm or have any significant deterioration in condition due to any alleged delay in receiving his HIV medications while he was incarcerated at the [GCDC]" (*Doc. 129-6 at 1*); (2) Mr. Frazier's medical records show that his CD4

levels measured 180 on May 21, 2019[,] and 177 on August 4, 2021, which is a negligible difference that would not significantly change an HIV patient's condition or prognosis" (*Id*.); (3) "any decrease in Mr. Frazier's CD4 levels after August 4, 2021 would not be attributable to any delay in receiving his medications at the [GCDC]" (*Id. at 2*); and (4) "Mr. Frazier was not deprived of any treatment options due to any claimed delay in receiving his HIV medication while at the [GCDC]" (*Id*.).

### 2.    Analysis

The record shows that Defendant Glenn: (1) successfully had Mr. Frazier fast-tracked to the SSP so that he could obtain his HIV medication; (2) promptly responded to Mr. Frazier's grievances and medical requests; and (3) successfully obtained his HIV medication during his second incarceration in the GCDC. And there is no evidence that: (1) Mr. Frazier made any request for medications or notified either Medical Defendant that he was not receiving his medications during the alleged five-day period in July or August of 2021; or (2) Defendant O'Neal intentionally failed to provide him any medication in the summer of 2021.

Based on the undisputed evidence before the Court, no reasonable juror could conclude that either Medical Defendant demonstrated deliberately indifference to Mr. Frazier's serious medical needs. See *Hines v. Anderson*, 547 F.3d 915, 920-21 (8th Cir. 2008) (holding that unspecified delays in refilling the prisoners' various

prescriptions did not rise to the level of constitutional violation); *Ervin v. Busby*, 992 F.2d 147, 150-51 (8th Cir. 1993) (finding that a month-long delay in refilling pretrial detainee's antidepressant prescription was not a constitutional violation).

While Mr. Frazier alleges that Medical Defendants' failure to provide him medication caused his viral numbers to drop causing "irreparable damage" (*Doc. 2 at 4*), he has failed to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). At the summary judgment stage, such an omission is fatal to Mr. Frazier's medical deliberate indifference claim. See *Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in medical treatment); and *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 2001) (a prisoner must demonstrate that the delay in obtaining medical treatment adversely affected his prognosis, or that defendants ignored an acute or escalating situation).

Finally, Mr. Frazier has failed to come forward with any evidence contradicting Dr. Cooper's testimony that the slight delay in receiving his HIV medications while at GCDC resulted in a denial of any future treatment options.

Mr. Frazier has failed to present any evidence to create a dispute of material fact that he suffered any constitutional deprivation. As a result, Medical Defendants are entitled to judgment as a matter of law on Mr. Frazier's medical deliberate indifference claims against them.

## IV.   Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' motions for summary judgment (*Docs. 126, 129*) be GRANTED.

2.      Mr. Frazier's claims be DISMISSED, with prejudice.

3.      The Clerk be instructed to close this case.

Dated 17 May 2024.


_____
UNITED STATES MAGISTRATE JUDGE